IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

SHILLIA LAWS,

      Plaintiff,

v.                          CASE NO. 2:04-cv-00747

JO ANNE BARNHART,
Commissioner of Social Security,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).  Presently pending before the court are the parties' cross-motions for judgment on the pleadings.

Plaintiff, Shillia Laws (hereinafter referred to as "Claimant"), filed an application for DIB on October 25, 2002, and protectively filed an application for SSI on November 30, 2002, alleging disability as of August 15, 2002, due to arthritis.  (Tr. at 43-45, 115-17, 59.)  The claims were denied initially and upon

reconsideration. (Tr. at 29-33, 35-36, 119-23, 125-29.) On July 8, 2003, Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 37.) The hearing was held on December 15, 2003, before the Honorable John Murdock. (Tr. at 341-68.) By decision dated February 25, 2004, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 13-21.) On May 26, 2004, the Appeals Council considered additional evidence offered by the Claimant, but determined it did not provide a basis for changing the ALJ's decision. (Tr. at 4-7.) On July 21, 2004, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2004). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is

2

whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2004).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574

3

(4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because she has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of rheumatoid arthritis, arthritis of the knees and sacroilitis. (Tr. at 16.) At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16.) The ALJ then found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 18.) As a result, Claimant cannot return to her past relevant work. (Tr. at 18.) Nevertheless, the ALJ concluded that Claimant could perform light and sedentary jobs, including food assembler, security worker, general clerk, surveillance system monitor, clerk and sorter clerk, which exist in significant numbers in the national economy. (Tr. at 19.) On this basis, benefits were denied. (Tr. at 21.)

<u>Scope of Review</u>

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept
> as sufficient to support a particular

4

> conclusion. It consists of more than a mere
> scintilla of evidence but may be somewhat less
> than a preponderance. If there is evidence to
> justify a refusal to direct a verdict were the
> case before a jury, then there is 'substantial
> evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting

Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)).

Additionally, the Commissioner, not the court, is charged with

resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d

1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not

abdicate their traditional functions; they cannot escape their duty

to scrutinize the record as a whole to determine whether the

conclusions reached are rational." Oppenheim v. Finch, 495 F.2d

396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was forty-six years old at the time of the

administrative hearing. (Tr. at 345.) Claimant completed the

ninth grade. (Tr. at 345.) In the past, she worked as a waitress.

(Tr. at 346.)

The Medical Record

The court has reviewed all evidence of record, including the

medical evidence of record, and will summarize it briefly below.

Evidence before the ALJ

The record includes a treatment note from Claimant's treating

5

physician, Ronald D. Chattin, D.O., dated March 31, 1997.  Claimant reported complaints of nausea, vomiting, vague abdominal pain and jaundice.  Dr. Chattin diagnosed hypovolemia and dehydration and jaundice with elevated transaminases.  Claimant was admitted to the hospital to rule out gallbladder disease versus an acute obstructive gallstone.  (Tr. at 130-31.)

On April 17, 1997, Claimant underwent surgery to remove her gallbladder.  (Tr. at 150.)

Claimant reported to the emergency room on December 6, 2001, complaining of right ear drainage.  She had recently been treated for an ear infection and stated she could not hear out of her ear.  Claimant was prescribed prednisone and instructed to continue taking her antibiotics.  (Tr. at 147.)

Claimant reported to the emergency room again on December 19, 2001, following an allergic reaction to Aleve.  (Tr. at 142.)

On January 1, 2003, Nilima Bhirud, M.D. examined Claimant at the request of the State disability determination service.  Claimant complained of back and knee pain and nervousness.  Claimant reported no history of mental health treatment.  Claimant's knees were swollen and there was bilateral crepitus and decreased range of motion.  (Tr. at 155.)  X-rays of the knees and lumbar spine were normal.  (Tr. at 157.)  Claimant could do heel and toe walking slowly, but could not squat.  Dr. Bhirud noted that Claimant should be seen by an orthopedic surgeon.  (Tr. at 155.)

Russ L. Go, M.D., a State agency medical source, completed a Physical Residual Functional Capacity Assessment on January 21, 2003, and opined that Claimant could perform light level work, that she could stand and/or walk at least two hours in an eight-hour workday, sit six hours in an eight-hour workday and that she was limited in pushing and/or pulling in the lower extremities. (Tr. at 163.) Dr. Go opined that Claimant could occasionally climb, balance, stoop, kneel, crouch and crawl and that Claimant should avoid even moderate exposure to extreme cold and concentrated exposure to vibration and hazards. (Tr. at 164, 166.)

John W. Byrd, M.D., a rheumatologist, examined Claimant on January 30, 2003, at the request of Dr. Chattin. Claimant reported that in the last year she had developed episodic pain and swelling of her knees associated with morning stiffness. Claimant's FANA was negative with a high sedimentation rate greater than 100. Claimant reported subjective improvement with prednisone, although effusions have not diminished. Dr. Byrd found mild knee effusions upon examination and attempted to aspirate Claimant's left knee, but was unsuccessful. (Tr. at 171.) He recommended that she continue tapering doses of prednisone and iron and noted that he would see her at Health Right. (Tr. at 172.) Claimant testified at the administrative hearing this was the only time she saw Dr. Byrd. (Tr. at 347.)

Rosemary L. Smith, Psy.D., a State agency medical source,

completed a Psychiatric Review Technique on February 7, 2003, and opined that Claimant had no severe mental impairment. (Tr. at 173-86.)

The record includes additional treatment notes from Dr. Chattin dated June 24, 1996, through April 10, 2003. On July 29, 2002, Claimant complained of joint pain in the knees and elbows. Claimant also noted she had been placed on Xanax and Paxil by another physician. Dr. Chattin noted no edema or joint effusion. Dr. Chattin diagnosed uticaria, polyarthralgia and anxiety. (Tr. at 197.) On September 10, 2002, Claimant continued to complain of knee and elbow pain. There was no effusion or heat in Claimant's joints. Claimant's knees were tender. Dr. Chattin ordered an ANA and sed rate work up. (Tr. at 196.) On September 17, 2002, Claimant's blood tests showed microcytic anemia. (Tr. at 195.) On October 15, 2002, Claimant reported no improvement in her knee pain. Claimant's ANA was negative and her sed rate was normal. Claimant had no joint swelling or warmth. Dr. Chattin suspected that Claimant had secondary rheumatoid arthritis and referred Claimant to Dr. Byrd. (Tr. at 192.) X-rays of Claimant's knees on January 3, 2003, were normal. (Tr. at 313.) On January 22, 2003, Claimant's knees were warm but not hot. Dr. Chattin diagnosed arthralgia in the knees, a high sed rate and iron deficient anemia. (Tr. at 191.) On February 4, 2003, Claimant reported to a physician's assistant that Dr. Byrd diagnosed rheumatoid arthritis

8

and prescribed new medication, Sulfasalazine.  (Tr. at 190.)  On February 19, 2003, Claimant's knees were tender with effusion bilaterally.  Dr. Chattin noted Claimant's diagnosis of rheumatoid arthritis and advised Claimant to begin taking the Sulfasalazine. (Tr. at 188.)

On April 10, 2003, Dr. Chattin examined Claimant and found bilateral inflamed and swollen knees with effusion.  He noted Claimant's diagnoses of rheumatoid arthritis and probably sacroilitis.  (Tr. at 187.)  On the same date, Dr. Chattin completed a Medical Assessment of Ability to do Work-Related Activities (Physical).  (Tr. at 213-16.)  He opined that Claimant could lift less than ten pounds occasionally and frequently due to decreased strength in her hands and Claimant's inability to bear extra weight because of her knee impairment.  He noted Claimant's diagnoses of rheumatoid arthritis, sacroilitis bilaterally and bilateral knee effusion.  (Tr. at 213.)  He opined that Claimant could stand and/or walk less than thirty minutes and sit only thirty minutes total per workday.  He opined that Claimant could never climb, stoop, crouch, kneel and crawl and only occasionally balance.  (Tr. at 214.)  Dr. Chattin opined that Claimant's ability to reach, push/pull and see were limited by Claimant's impairments. He felt that Claimant had certain environmental restrictions caused by height, moving machinery, temperature extremes and vibration. (Tr. at 215.)

On May 6, 2003, M.G. Lambrechts, M.D., a State agency medical source, completed a Physical Residual Functional Capacity Assessment and opined that Claimant was limited to light level work, that she could stand and/or walk up to three hours in an eight-hour day, sit six hours in an eight-hour day and occasionally climb, balance, stoop and kneel.  He further opined that Claimant should avoid even moderate exposure to extreme cold and vibration and avoid concentrated exposure to extreme heat and hazards.  (Tr. at 217-24.)

On May 12, 2003, Dr. Smith completed a Psychiatric Review Technique and opined again that Claimant's mental impairments were not severe.  (Tr. at 226-39.)

Evidence Submitted to the Appeals Council

On April 14, 2004, Mari Sullivan Walker, M.A. examined Claimant at the request of her counsel.  On the WAIS-III, Claimant attained a verbal IQ score of 74, a performance IQ score of 75 and a full scale IQ score of 72.  On the WRAT-3, Claimant's reading was equivalent to high school, her spelling was on the sixth grade level and her arithmetic was on the seventh grade level.  (Tr. at 335.)  Ms. Walker diagnosed anxiety disorder, not otherwise specified and depressive disorder, not otherwise specified on Axis I and borderline intellectual functioning on Axis II.  (Tr. at 336.)  Ms. Walker also completed a Medical Assessment of Ability to do Work-Related Activities (Mental) on which she opined that

10

Claimant had a poor ability to relate to co-workers, deal with the public, interact with supervisors, deal with work stresses, understand, remember and carry out complex job instructions and behave in an emotionally stable manner.  (Tr. at 338-40.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ erred in the weight afforded the opinion of Dr. Chattin, Claimant's treating physician; (2) the ALJ erred in failing to find that Claimant's anxiety disorder was severe and erred in failing to include such limitations related thereto and others in a hypothetical question; and (3) the Appeals Council failed to properly consider the limitations contained within the psychological report of Ms. Walker.  (Pl.'s Br. at 5-13.)

The Commissioner argues that (1) the ALJ adequately weighed the opinion of Dr. Chattin; (2) the ALJ properly determined that Claimant's anxiety disorder was not a severe impairment; and (3) the Appeals Council properly determined that the new evidence offered by Claimant did not provide a basis for changing the ALJ's decision.  (Def.'s Br. at 8-15.)

Claimant first argues that the ALJ erred in failing to afford controlling weight to the opinion of Dr. Chattin, Claimant's treating physician.  Claimant points out that when limitations from Dr. Chattin were included in a hypothetical question, the

vocational expert could identify no jobs. Claimant argues that the limitations opined by Dr. Chattin were consistent with the observation of Dr. Bhirud that Claimant had marked swelling and tenderness in the knees and needed to be evaluated by an orthopedic surgeon. In addition, Claimant asserts that Dr. Byrd, who examined Claimant at the request of Dr. Chattin, recommended additional testing and did not make "normal" findings. (Pl.'s Br. at 7.) Claimant further notes that Dr. Lambrechts, a State agency medical source, did not have the benefit of all of Dr. Chattin's reports. (Pl.'s Br. at 7-8.)

In his decision, the ALJ stated that he gave no weight to the opinion of Dr. Chattin on the Medical Assessment of Ability to do Work-Related Activities (Physical). The ALJ explained that Dr. Chattin's limitations were "too extreme and not supported by the objective findings of record, including x-rays that are essentially normal. Also the assessment is not consistent with Dr. Chattin's own treatment records of the claimant. As noted in the record Dr. Chattin recommended that the claimant be examined by Dr. Byrd, who then found that the claimant's physical examination was normal except for mild knee effusions." (Tr. at 18.) The ALJ accepted the opinions of the State agency medical sources who opined that Claimant was capable of light level work with limitations in the ability to stand and walk. The ALJ ultimately concluded that Claimant was capable of light level work with an at will sit/stand

option.  He further found that Claimant could never climb ropes,
ladders or scaffolds, never kneel or crawl, that Claimant could
occasionally climb stairs, balance and stoop and that she must
avoid extreme cold, vibration, hazardous machinery and heights.
(Tr. at 18.)

The court proposes that the presiding District Judge find that
the ALJ properly weighed the evidence of record from Dr. Chattin
and others in keeping with applicable case law and regulations.  A
treating physician's opinion is afforded "controlling weight only
if two conditions are met: (1) that it is supported by clinical and
laboratory diagnostic techniques and (2) that it is not
inconsistent with other substantial evidence." Ward v. Chater, 924
F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§
404.1527(d)(2) and 416.927(d)(2) (2004).

The opinion of a treating physician must be weighed against
the record as a whole when determining eligibility for benefits.
20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (2004).  Under §§
404.1527(d)(1) and 416.927(d)(1), more weight generally is given to
an examiner than to a non-examiner.  Sections 404.1527(d)(2) and
416.927(d)(2) provide that more weight will be given to treating
sources than to examining sources (and, of course, than to non-
examining sources).  The Fourth Circuit Court of Appeals has held
that "a non-examining physician's opinion cannot by itself, serve
as substantial evidence supporting a denial of disability benefits

13

when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986) (more weight given to an opinion by a specialist about issues in his/her area of specialty).

As the ALJ points out in his decision, Dr. Chattin's treatment notes do not support the extreme limitations found by him on the Medical Assessment of Ability to do Work-Related Activities (Physical). Dr. Chattin's treatment notes indicate diagnoses of rheumatoid arthritis and sacroiliitis, but they do not provide much in the way of objective evidence to support the limitations opined by him on the assessment. Dr. Chattin's early treatment notes, dated July 29, 2002, September 10, 2002, and October 15, 2002, are fairly benign, noting no joint effusion or edema in the joints of the wrists, knees and elbow. (Tr. at 192, 196-97.) In Dr. Chattin's treatment note dated January 22, 2003, Claimant's knees were warm but not red or hot, and Claimant had some effusion. (Tr. at 191.) On February 19, 2003, and April 10, 2003, Claimant had bilateral inflamed and swollen knees with effusion. (Tr. at 187-88.) While Dr. Chattin's treatment notes reveal a progressive worsening in Claimant's condition, the treatment notes do not

14

provide objective evidence of a disabling condition or even one that results in limitations more severe than those found by the ALJ. Furthermore, and contrary to Claimant's assertions, Dr. Byrd, a rheumatologist who examined Claimant on January 30, 2003, at the request of Dr. Chattin, did note a "[n]ormal" physical examination "except for mild knee effusions. I [at]tempted to aspirate a left knee x 2 with no fluid obtained and did not inject the knees." (Tr. at 171.) X-rays of Claimant's knees were normal. (Tr. at 206.) Dr. Bhirud noted marked swelling and tenderness in Claimant's knees, but he examined Claimant prior to Dr. Byrd and prior to the time Claimant began taking medication prescribed by Dr. Byrd. (Tr. at 155.) Notably, he found Claimant could walk on her heels and toes, albeit slowly. (Tr. at 155.)

The ALJ ultimately adopted the limitations found by Dr. Lambrechts, the State agency medical source. Claimant argues that Dr. Lambrechts did not have the benefit of "reports of the claimant's treating physicians," based on the fact that Dr. Lambrechts checked "no" when asked if there were treating and examining source statements regarding the Claimant's physical capacities in the file. (Tr. at 223.) Dr. Chattin completed his assessment on April 10, 2003, while Dr. Lambrechts completed the Physical Residual Functional Capacity Assessment on which he checked the above box on May 6, 2003. It is entirely possible that the assessment from Dr. Chattin was not yet part of the record when

15

Dr. Lambrechts completed his assessment.  However, Dr. Lambrechts'
notations under "additional comments" make clear that he reviewed
the evidence of record available to him, including treatment notes
from Dr. Chattin (including the final treatment note dated April
10, 2003).  (Tr. at 224.)  Dr. Lambrechts' opinion is generally
consistent with substantial evidence of record, including Dr.
Chattin's treatment notes and the report of Dr. Byrd.

Therefore, the court proposes that the presiding District
Judge find that the ALJ properly weighed the evidence of record
from Dr. Chattin and other medical sources of record and that his
findings are supported by substantial evidence.

Next, Claimant argues that the ALJ erred in failing to find
Claimant's anxiety disorder to be a severe impairment.  Claimant
notes that Dr. Chattin treated Claimant for anxiety over several
years and that Ms. Walker, in evidence submitted to the Appeals
Council, diagnosed an anxiety disorder.  Claimant argues that the
ALJ failed to include limitations related to Claimant's anxiety
disorder in a hypothetical question.  (Pl.'s Br. at 9-11.)  In a
related vein, Claimant argues that the Appeals Council erred in
finding that the evidence from Ms. Walker did not provide a basis
for changing the ALJ's decision.  (Pl.'s Br. at 12-13.)

In his decision, the ALJ acknowledged Claimant's complaints of
nervousness, but noted that Claimant had undergone no mental health
treatment.  In evaluating Claimant's impairments at step two of the

sequential analysis, the ALJ determined that Claimant has a mild restriction in activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence and pace and no episodes of decompensation. The ALJ noted that Claimant reported watching television six hours per day and listening to the radio for one hour. He noted that Claimant visits her mother about three times per week and that she receives visits from friends. Claimant goes to her mother's house and to medical appointments. He noted no evidence of concentration problems related to a mental condition, but acknowledged that Claimant alleged some problems with concentration due to pain. (Tr. at 15.) Based on the above ratings, the ALJ concluded that Claimant did not suffer a severe mental impairment. See 20 C.F.R. §§ 404.1520a(d)(1) and 416.920a(d)(1) (2004) (A rating of "none" or "mild" in the first three areas, and a rating of "none" in the fourth area will generally lead to a conclusion that the mental impairment is not "severe," unless the evidence indicates otherwise.). In weighing the medical evidence of record, the ALJ explained later in his decision that he afforded great weight to the opinions of the State agency medical source, Dr. Smith, who opined that Claimant's mental impairment was not severe. (Tr. at 18.)

The court proposes that the presiding District Judge find that the ALJ's determination that Claimant's mental impairment was not

severe is supported by substantial evidence.  As the ALJ noted in his decision, Claimant received no ongoing mental health treatment. Dr. Chattin never recommended that she undergo counseling or receive mental health treatment in addition to medication.  As the ALJ's decision indicates, Claimant's daily activities, social functioning and concentration, persistence and pace, while mildly limited, were not limited enough to suggest her mental impairment had an impact on her ability to work.  Moreover, the ALJ's findings are consistent with those of Dr. Smith, the State agency medical source who opined on two occasions that Claimant had no severe mental impairment.

The court further proposes that the presiding District Judge find that the Appeals Council's decision that the new evidence offered by Claimant did not provide a basis for changing the ALJ's decision is supported by substantial evidence.

In its decision, the Appeals Council considered the additional evidence from Ms. Walker and explained that it did not provide a basis for changing the ALJ's decision because it occurred after the date of the ALJ's decision and "the IQ scores which you obtained on testing do not indicate that you would be unable to perform unskilled work activity."  (Tr. at 5.)

Because the Appeals Council specifically incorporated the evidence from Ms. Walker into the administrative record, the court must review the record as a whole, including the new evidence, in

18

order to determine if the Commissioner's decision is supported by substantial evidence. Wilkins v. Secretary, 953 F.2d 93, 96 (4th Cir. 1991).

Ms. Walker examined Claimant in April of 2004, over a month and a half after the ALJ's decision on February 25, 2004. While "medical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability," Wooldridge v. Bowen, 816 F.2d 157, 160 (4th Cir. 1987), evidence from Ms. Walker does not overcome the fact that Claimant received no treatment during the relevant time period for a mental impairment and that the evidence of record related to the four areas of functioning simply do not indicate an individual seriously limited by a mental impairment. Furthermore, while Claimant may have suffered from borderline intellectual functioning prior to Ms. Walker's diagnosis, the ALJ included the limitation in the hypothetical question that Claimant had a ninth grade education, and the jobs identified by the vocational expert were unskilled in nature. (Tr. at 360, 361.) Thus, the decision of the Appeals Council that the new evidence offered by Claimant did not provide a basis for changing the ALJ's decision is supported by substantial evidence, and the court proposes that the presiding District Judge so find.

Finally, Claimant argues that the ALJ failed to include

19

additional limitations in the hypothetical question, including the side effects of Claimant's medication, numbness and weakness in her hands, limitations in sitting, standing and walking and an inability to drive. (Pl.'s Br. at 11.)

The court proposes that the presiding District Judge find that the ALJ's hypothetical question included those limitations supported by substantial evidence of record. See Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987) (While questions posed to the vocational expert must fairly set out all of claimant's impairments, the questions need only reflect those impairments that are supported by the record.). Regarding limitations in sitting, standing and walking, the ALJ provided for an unlimited sit/stand option in the hypothetical question to the vocational expert. (Tr. at 360-62.) As to Claimant's alleged inability to drive, there is no indication that Claimant's treating physician or anyone else ever instructed Claimant not to drive. In short, there is no indication that Claimant's physical or mental status rendered employment unavailable.

As to medication side effects, the ALJ acknowledged in his decision that Claimant testified to side effects from her medications, including drowsiness. However, the ALJ also noted that Claimant "reported on her pain questionnaire that she experienced no side effects from her medications (Exhibit 4E)." (Tr. at 17.) The court further notes that Claimant did not report

drowsiness to Dr. Chattin.  Regardless, the ALJ appropriately found that Claimant's ability to perform light level work was reduced by a need to avoid hazardous machinery and heights.  (Tr. at 18.)

Finally, as to Claimant's complaints of numbness and weakness in her hands (Tr. at 353-54), on the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Chattin noted that certain physical functions were affected by Claimant's impairments, including her ability to reach, push and pull, yet in his treatment notes there are no findings which would support such limitations. Instead, on January 22, 2003, Dr. Chattin noted that Claimant's "[h]ands - wrist neg." (Tr. at 191.)  On February 19, 2003, Dr. Chattin noted "no joint problems of hands - fingers." (Tr. at 188.)  Likewise, Dr. Bhirud found the joints of both of Claimant's hands normal.  (Tr. at 155.)

Based on the above, the court proposes that the presiding District Judge find that the ALJ's hypothetical question included those limitations supported by substantial evidence and that the ALJ did not err in failing to include the additional limitations identified by Claimant.

For the reasons set forth above, it is hereby respectfully RECOMMENDED that the presiding District Judge DENY the Plaintiff's Motion for Judgment on the Pleadings, GRANT the Defendant's Motion for Judgment on the Pleadings, AFFIRM the final decision of the Commissioner and DISMISS this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby FILED, and a copy will be submitted to the Honorable John T. Copenhaver, Jr.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then ten days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties, Judge Copenhaver, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to counsel of record.

| | |
|---|---|
| June 27, 2005 | Mary E. Stanley |
| Date | Mary E. Stanley |
| | United States Magistrate Judge |

22